UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JANINE ORZECHOWSKI and DON MASTRO, | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| -against- | |
| THE CITY OF NEW YORK; NYPD Officer Anthony Chow, Shield #19046; NYPD Detective Joseph R.Tallarine, Shield #5813; Retired NYPD Detective Michael O'Keefe, Shield #3596; NYPD Officer Arnaldo Rivera, Shield #20430; Officers John and Jane Does (the names "JOHN DOE" and "JANE DOE" being fictitious, as the true names of said defendants are not presently known), individually and in their official capacities, | **10 Civ. 0147 (LTS)**<br><br>**ECF CASE** |
| Defendants. | |

_____

Plaintiffs JANINE ORZECHOWSKI and DON MASTRO, by their attorneys, DAVID B. RANKIN, of the Law Office of Rankin and Taylor, and JEFFREY A. ROTHMAN, Attorney at Law, as and for their complaint, hereby state and allege:

**STATEMENT OF THE CASE**

This is a civil rights action in which the plaintiffs, JANINE ORZECHOWSKI and DON MASTRO, seeks redress from the defendants, THE CITY OF NEW YORK; NYPD Officer Anthony Chow, Shield #19046; NYPD Detective Joseph R. Tallarine, Shield #5813; NYPD Detective Michael O'Keefe, Shield #3596; NYPD Officer Arnaldo Rivera, Shield #20430; Officers John and Jane Does for violation of their rights as guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

**JURISDICTION**

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2. This Court has original jurisdiction over plaintiffs' causes of action brought pursuant to 28 U.S.C. §§ 1331 and 1343 (3) and (4), since they seek redress for the violation of plaintiff's federal constitutional and civil rights.

## VENUE

3. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c).

## JURY DEMAND

4. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

5. Plaintiffs demand a trial by jury in this action on each and every one of their damage claims.

## PARTIES

6. At all times pertinent to this complaint, plaintiffs JANINE ORZECHOWSKI and DON MASTRO were citizens of the United States and New York State, and resided in the Kings County, New York.

7. Defendant THE CITY OF NEW YORK is and was at all times relevant to this action a municipal corporation authorized under the laws of the State of New York.

8. Defendants NYPD Officer Anthony Chow, Shield #19046; NYPD Detective Joseph R. Tallarine, Shield #5813; NYPD Detective Michael O'Keefe, Shield #3596; NYPD Officer Arnaldo Rivera, Shield #20430; and Officers John and Jane Does were at all times relevant to this action police officers employed by the defendant City of New York.

9. At all times pertinent to this complaint, in doing the acts and things hereafter complained of, defendants were acting within the scope of their employment and using their authority in furtherance of their employer's interests and were acting in their respective capacities as stated, and said defendants were acting under color of state law.

10. Defendants NYPD Officer Anthony Chow, Shield #19046; NYPD Detective Joseph R. Tallarine, Shield #5813; NYPD Detective Michael O'Keefe, Shield #3596; NYPD Officer Arnaldo Rivera, Shield #20430; and Officers John and Jane Does are being sued in their official and individual capacities for monetary damages.

11. Defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice and gross disregard for plaintiffs' rights.

## STATEMENT OF FACTS

12. On August 26, 2008, Ms. Orzechowki and Mr. Mastro resided at 239 Himrod Street, Apartment 1, Brooklyn, New York 11237, in the County of Kings, in the City and State of New York.

13. On August 26, 2008, between approximately 11:00 and 11:45 P.M., Mr. Mastro was walking from the DeKalb L train station to his home at 239 Himrod Street, Apartment 1, Brooklyn, New York 11237, in the County of Kings, in the City and State of New York.

14. Mr. Mastro was walking on the sidewalk with his bicycle, and was not riding his bicycle.

15. As Mr. Mastro was unlocking the front door of the apartment building, Defendant Chow and Defendant Rivera pushed his head into the window, thereby seizing Mr. Mastro without a lawful basis to do so.

16. Defendant Chow and Defendant Rivera restrained, pulled backwards, and physically manipulated Mr. Mastro's body.

17. Defendant Chow and Defendant Rivera began to question Mr. Mastro – questions like "Where is it at? Where is your cash? What are you selling? Where are the drugs?" – as they frisked him.

18. Mr. Mastro stated he did not have any narcotics on his person.

19. Defendant Chow and Defendant Rivera in no way made clear they were employed by the New York City Police Department; they were wearing plainclothes and did not until later make visible the shields they wore around their necks, despite being asked by Mr. Mastro to show their identification (and when Defendants Chow and Rivera later took out the shields they wore around their necks, part of the identifying information was obscured).

20. After Mr. Mastro was pushed towards the curb, away from his residence, he was handcuffed.

21. Mr. Mastro repeated that he did not have any narcotics.

22. Mr. Mastro asked to use his cell phone to call the police.

23. Defendant Chow and Defendant Rivera threw Mr. Mastro's cell phone towards the trashcans in front of 239 Himrod.

24. Defendant Chow and Defendant Rivera shoved Mr. Mastro against their van and searched his person.

25. As Mr. Mastro's body was pushed up to the vehicle, Defendant Chow and Defendant Rivera kneed him in the lower back and struck him in the back of the head several times.

26. Defendant Chow and Defendant Rivera took Mr. Mastro's bag and searched it.

27. At no point, either before or after being placed in handcuffs, was Mr. Mastro read his Miranda Rights, nor was he told why he was being arrested, even after Mr. Mastro asked.

28. Two detectives, on information and belief Defendants Tallarine and O'Keefe, arrived at this point and released Mr. Mastro from his handcuffs without explanation.

29. At this point, Ms. Orzechowski came outside because she heard arguing.

30. It appeared to Ms. Orzechowski that Mr. Mastro was perhaps being robbed.

31. Defendants Chow, Rivera, Tallarine, O'Keefe, and perhaps an additional John Doe defendant were present when Ms. Orzechowski came outside.

32. As Mr. Mastro was asking for Defendants' names, Ms. Orzechowski was told something to the effect of "[g]o the hell back to Ohio" by one of the Defendants, insinuating she had only recently moved to New York from the Midwest, in spite of the fact that Ms. Orzechowski was born in the nearby Jersey City and has lived in New York for a number of years.

33. After asking for Defendants' badge numbers, one of the Defendants told Ms. Orzechowski, "[w]e don't have to give you shit."

34. Mr. Mastro then attempted to see the license plate of the Defendants' vehicle.

35. One of the Detectives, on information and belief either Defendant Tallarine or O'Keefe, revved the engine of the car and drove forward as if to run over Mr. Mastro.

36. Mr. Mastro raised his arms in dismay (a "what?" gesture).

37. The Defendant driver, on information and belief either Defendant Tallarine or O'Keefe, quickly exited the car, approached Mr. Mastro in an agitated and aggressive manner, and shoved him against the car.

38. The detective, on information and belief either Defendant Tallarine or O'Keefe, proceeded to knee Mr. Mastro, struck Mr. Mastro several times in the tailbone, punched him in the nose, and re-handcuffed him, thereby causing injuries to his back, face, and wrists.

39. One of the Defendants, on information and belief either Defendant Tallarine or O'Keefe, then grabbed Ms. Orzechowski violently and pulled her hair, ripping some out in the process.

40. Ms. Orzechowski's head was then thrown into a parked car by that Defendant, on information and belief either Defendant Tallarine or O'Keefe.

41. That Defendant, on information and belief either Defendant Tallarine or O'Keefe, then forced Ms. Orzechowski to the ground by grabbing a handful of her hair.

42. Ms. Orzechowski landed on her knees and hands, which caused bleeding to both of her knees, her left leg, and left foot.

43. That Defendant, on information and belief either Defendant Tallarine or O'Keefe, then placed Ms. Orzechowski in handcuffs.

44. Defendants then continued to physically assault Mr. Mastro, kneeing him, pushing him, and otherwise striking him.

45. Defendants transported Mr. Mastro and Ms. Orzechowski to the 83rd Precinct in an unmarked vehicle. At no point in time were either told why they were being arrested.

46. Because Ms. Orzechowski left her home intending only to be outside for a moment, she was wearing a revealing tank top and short skirt, both of which allowed her underwear to be clearly visible.

47. While being patted down at the Precinct by a Defendant Jane Doe, Ms. Orzechowski asked that a male Defendant, on information and belief either Defendant Tallarine or O'Keefe, not be present, as her clothes were not suitable for more than lounging in her home and she was uncomfortable with his presence in light of this. Defendants told Ms. Orzechowski that because she was wearing something, it was appropriate to pat her down in the presence of the male Defendant.

48. When Mr. Mastro complained that the handcuffs were too tight, Defendants tightened them instead of loosening them.

49. While Mr. Mastro was handcuffed to a metal pole at the 83rd Precinct, Mr. Mastro overheard Defendants wondering what charges to lodge against Ms. Orzechowski and him.

50. Around the same time, Ms. Orzechowski was accused of being "on some good shit" by Defendants.

51. Defendants attempted to question Ms. Orzechowski without having read her Miranda Rights. When she refused to answer questions until having spoken with an attorney, Defendants informed her that she was making it more difficult for herself.

52. At approximately 1 A.M., Ms. Orzechowski was told by Defendants she was being charged with Obstruction of Governmental Administration. When she asked whether that was

why she was arrested, one of the Defendants, on information and belief either Defendant Tallarine or O'Keefe said, "[t]hat and your big mouth."

53. At approximately 2 A.M., Mr. Mastro was moved to a holding cell.

54. When Mr. Mastro informed the Defendants that he needed medication, Defendants ignored him.

55. At some point in the early morning on August 27, 2008, possibly around 4 A.M., Ms. Orzechowski was transported to Brooklyn Central Booking.

56. At some point in the early morning, on August 27, 2008, Mr. Mastro was transported to Brooklyn Central Booking, where he was held while he experienced anxiety attacks and withdrawal from his medication, in spite of his requesting his medication multiple times.

57. After approximately twenty-four hours in detention, Ms. Orzechowski was finally arraigned and released at approximately 10:30 P.M. on August 27, 2008.

58. After approximately thirty-six hours in detention, Mr. Mastro was finally arraigned and released on August 28, 2008.

59. Mr. Mastro was charged with violating New York State Penal Law § 195.05, Obstruction of Governmental Administration in the Second Degree; PL § 205.30, Resisting Arrest; and PL § 240.20(5), Disorderly Conduct, based on the following allegations sworn to by a Paralegal Marta Kuklik of the Kings County District Attorney's Office:

> Deponent is informed by Police Officer Anthony Chow, Shield No. 19046, of BNND, that, at the above time and place, informant observed Defendant riding a bicycle on a sidewalk, that after informant asked Defendant for ID, Defendant started yelling that informant and informant's partner, Police Officer Arnaldo Rivera, Shielsd [sic] No. 20430, were not real cops and that they were trying to rob Defendant, refused to show informant Defendant's ID and pushed informant's partner.

>Deponent is further informed by Detective Joseph R. Tallarine, Shield No. 5813, of 83 Pct., that, at the above time and place, informant observed Defendant flailing Defendant's arms in front of Police Officer Chow and Police Officer Rivera and heard Defendant's yelling that they have no right, that they were not cops.
>
>Deponent is further informed by informant that, Defendant refused to leave the above scene, still yelling and standing in front of informant's car, refusing to move
>
>Deponent is further informed by informant that, Defendant resuisted [sic] to be handcuffed by flailing Defendant's arms and by shoving informant.

60. These factual allegations made against Plaintiff Don Mastro are lies.

61. At his arraignment, Mr. Mastro's charges were adjourned in contemplation of dismissal. Pursuant to the adjournment in contemplation of dismissal, the charges have been dismissed in their entirety.

62. Ms. Orzechowski was charged with violating with New York State Penal Law § 195.05, Obstruction of Governmental Administration in the Second Degree; and Penal Law § 205.30, Resisting Arrest, based on the following allegations sworn to by Paralegal Marta Kuklik:

>Deponent states that deponent is informed by Joseph R. Tallarine, Shield No. 5813, of 83 Squad, that, at the above time and place, when informant was attempting handcuff Don J. Mastro, Arrest No. K08675963, Defendant jumped on informant's back and started fighting with informant in order to prevent informant from handcuffing Defendant. Deponent is further informed by informant, that Defendant resisted to be handcuffed [sic] by refusing to place Defendant's arms behind Defendant's back.

63. These factual allegations made against Plaintiff Janine Orzechowski are lies.

64. At her arraignment, Ms. Orzechowski's charges were adjourned in contemplation of dismissal. Pursuant to the adjournment in contemplation of dismissal, the charges have been dismissed in their entirety.

65. At all relevant times, Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

66. During the course of the events complained of herein, Defendants told witnesses to leave the scene and threatened them with legal repercussions if they did not leave the scene.

67. As a direct and proximate result of defendants' acts, plaintiffs suffered violations of their civil rights, including loss of physical liberty and property, physical injury, pain and suffering, degradation, humiliation, loss of reputation and esteem and various other emotional injuries, and costs and expenses.

## FIRST CAUSE OF ACTION
(Constitutional Violations - 42 U.S.C. § 1983)

68. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69. Defendants, under color of state law, subjected plaintiffs to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving Plaintiffs of their rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

    A. Freedom from unreasonable search and seizure of their persons and property, including the excessive use of force;

    B. Freedom from arrest without probable cause;

      D.      Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiffs were aware and did not consent;

      E.      Freedom from the manufacture of false accounts / evidence against them by police;

      F.      Freedom from abuse of process;

      G.      Freedom from interference with and retaliation for free speech, including the right to observe and comment upon the actions of the police;

      H.      Freedom from deprivation of liberty without due process of law; and

      I.      The enjoyment of equal protection, privileges, and immunities under the laws.

68.    Defendants' deprivation of plaintiffs' constitutional rights resulted in the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
(Failure to Intervene - Fourth Amendment - 42 U.S.C. § 1983)

69.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70.    Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Department or other law enforcement agency employing unjustified and excessive force against a civilian, falsely arresting a civilian, or otherwise violating the law or the civilian's constitutional rights.

71. Defendants were each and all present when the plaintiffs were illegally arrested and physically abused by their fellow NYPD officers, and were each and all personally involved in Mr. Mastro and Ms. Orzechowski's arrest and processing at the precinct and subsequent prosecution.

72. Defendants' use of force against plaintiffs was obviously excessive and unjustified under the circumstances, yet none of the defendants took any action or made any effort to intervene, halt, or protect plaintiffs from being subjected to excessive force.

73. Mr. Mastro and Ms. Orzechowski's arrest and the initiation of criminal charges against them were clearly without probable cause or other legal justification, yet Defendants failed to take any action or make any effort to intervene, halt, or protect plaintiffs from being unlawfully and wrongfully arrested and prosecuted.

74. Defendants' violations of plaintiffs' constitutional rights by failing to intervene resulted in the injuries and damages set forth above.

**THIRD CAUSE OF ACTION**
(Individual Supervisory Liability - 42 U.S.C. § 1983)
AGAINST DEFENDANT DOES

75. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76. Defendant Does were, at all relevant times, a supervisor or supervisors in the NYPD, with oversight responsibility for the training, instruction, supervision, and discipline of the other defendants who deprived plaintiffs of their federal constitutional rights.

77. Defendant Does knew or should have known that defendants used unreasonable and excessive force against plaintiffs, conducted an unreasonable seizure and false arrest of plaintiffs, and/or were abusing process against plaintiffs, depriving them of due process of law.

78. Defendant Does were personally involved in either ordering, or failing to take preventative and remedial measures to guard against, the deprivations of plaintiffs' constitutional rights complained of herein.

79. Defendant Does' failure to train, supervise, and/or discipline the other defendants with respect to the constitutional rights of civilians amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to Plaintiffs set forth above.

## FOURTH CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

80. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

82. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83. At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning widespread illegal and baseless stops, frisks, and arrests of, and the illegal and baseless issuance of summonses to, individuals in the absence of reasonable suspicions or probable cause. The NYPD had and has in place a policy, practice, custom, or usage of implementing a quota system, whereby police officers are expected to make a certain number of arrests and issue a certain amount of summonses per month. This quota system exerts enormous pressure on police officers, and their supervisors, to make illegal stops, frisks, and arrests, and to illegally issue summonses. These illegal policies, practices, customs, or usages have recently been exposed through an NYPD Police Officer whistleblower named Officer Adil Polanco, in an interview on ABC 7 News. The NYPD's Deputy Commissioner for Public Information, Paul Browne, has issued a statement explaining that the NYPD gives its police officers "productivity goals." These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority, including the notation of police identifying information. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.  At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto

policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence." These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86. Defendants' deprivation of plaintiffs' constitutional rights resulted in the injuries and damages set forth above.

**WHEREFORE**, Plaintiffs demands judgment against the Defendants individually and jointly and pray for relief as follows:

- a. That they be compensated for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation; and
- b. That they be awarded punitive damages against the individual defendants; and
- c. That they be compensated for attorneys' fees and the costs and disbursements of this action; and
- d. For such other further and different relief as to the Court may seem just and proper.

Dated:    New York, New York
         March 4, 2010

                                                Respectfully Submitted,

                              By:_____/s/_____
                                David B. Rankin (DR 0863)
                                Law Office of Rankin and Taylor
                                *Attorneys for Plaintiff*
                                350 Broadway, Suite 700
                                New York, NY 10013
                                t: 212-226-4507

                                and;

                                Respectfully Submitted,

                              By:_____/s/_____
                                JEFFREY A. ROTHMAN, Esq.
                                (JR-0398)
                                315 Broadway, Suite 200
                                New York, NY 10007
                                t: 212 - 227 – 2980

                                Attorneys for Plaintiffs